UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

CIVIL ACTION NO. 05-328-JBC

MIKE HOLDER
d/b/a A&M RETRIEVALS,                                                                    PLAINTIFF,

V.                    **MEMORANDUM OPINION AND ORDER**

MARC ROBBINS,                                                                              DEFENDANT.

\* \* \* \* \* \* \* \* \* \*

This matter is before the court on the defendant's first motion to dismiss or, in the alternative, for summary judgment (DE 2). The court, having reviewed the record and being otherwise sufficiently advised, will grant the motion in part and deny it in part.

When resolving a motion to dismiss, the court must consider the pleadings in the light most favorable to the party asserting the claim and take that party's factual allegations as true. *Jones v. Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993).

**Background**

The plaintiff is engaged in the business of assisting Madison County businesses collect payment for bad checks. The defendant is the Madison County Attorney and is responsible for the prosecution of crimes in Madison County. The defendant also runs the Madison County Check Enforcement Program, which facilitates the process of recovering funds from bad checks for businesses registered with the program.

The alleged violations and infringements arise out of the defendant's

prosecutorial decisions and his informing businesses that they must use the county program instead of the plaintiff's. The defendant has refused to prosecute and has dismissed cases in which the plaintiff had been attempting to collect on bad checks and has recalled arrest warrants that had been initiated by the plaintiff. The defendant has also informed businesses that they must pursue collection through the county attorney's office as opposed to using the plaintiff's services.

The plaintiff alleges that the defendant's conduct infringes on the plaintiff's rights under the Fourteenth Amendment due process and equal protection[1] clauses of the United States Constitution and sections 2 and 3 of the Kentucky Constitution and constitutes tortious interference with the plaintiff's business. The plaintiff sued the defendant in his individual and official capacities. Federal jurisdiction is asserted under 42 U.S.C. § 1983, because the defendant was acting under color of state law. The plaintiff requested an order enjoining the defendant from further interfering with his business and requiring the defendant to treat all bad check cases equally, regardless of the plaintiff's involvement. The plaintiff also requested compensatory and punitive damages.

The defendant has asserted eight grounds for dismissal of the action: (1) prosecutorial immunity in his individual capacity; (2) qualified immunity in his

---

[1] The plaintiff's complaint does not specifically refer to the equal protection clause. However, because the plaintiff does allege violations of section 3 of the Kentucky Constitution, which is generally consistent with the equal protection clause of the United States Constitution, the court will address the validity of that claim.

individual capacity; (3) sovereign immunity; (4) standing; (5) abstention; (6) failure to state a claim upon which relief may be granted; (7) statute of limitations; and (8) lack of an independent federal basis for pendent state law claims.

**Legal Analysis**

A person acting under color of state law is subject to suit if he deprives another of "any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.

### A.   Claims Against the Plaintiff in His Individual Capacity

Section 1983 claims against a defendant in his individual capacity "seek to impose personal liability upon a government official for actions he takes under color of state law." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). The claim will succeed if "the official, acting under color of state law, caused the deprivation of a federal right." *Id.* at 166. Personal defenses are available to the defendant in an individual capacity suit. *Id.*

#### 1.   Absolute Prosecutorial Immunity

The Supreme Court has held that "in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). Absolute prosecutorial immunity extends to actions "intimately associated with the judicial phase of the criminal process." *Id.* Absolute immunity does not extend, however, to actions taken in a prosecutor's administrative or investigative role. *Higgason v.*

3

*Stephens*, 288 F.3d 868, 877 (6th Cir. 2002).  "The decision on whether or not to prosecute is unquestionably advocacy and is at the heart of the *Imbler* holding." *Boone v. Kentucky*, 72 Fed. Appx. 306, 307 (6th Cir. 2003).  The decision to seek an arrest warrant, and conversely not to seek arrest, is also insulated by absolute prosecutorial immunity, because it is integral to the initiation of prosecution. *Ireland v. Tunis*, 113 F.3d 1435, 1446 (6th Cir. 1997).

Absolute immunity applies even when the prosecutor acts wrongfully or maliciously.  *Id.*  Thus, even assuming that the defendant refused to prosecute and dismissed cases in which the plaintiff was involved and rescinded arrest warrants that the plaintiff issued in an attempt to drive the plaintiff out of business, the plaintiff's damages claims against the defendant in his individual capacity based on that behavior must fail pursuant to the defendant's absolute immunity.  Absolute immunity does not, however, bar the claim for injunctive relief against the defendant in his individual capacity.

The plaintiff also claims that the defendant is individually liable for falsely informing local businesses that they must pursue payment of bad checks through his office, rather than through private businesses such as the plaintiff's.  Under Kentucky law, the drawer of a bad check is presumed to know the check would not be paid if he fails to pay the check within 10 days after receiving notice that payment was refused by the drawee.  K.R.S. § 514.040(4)(b).  The defendant describes the Madison County Attorney Check Enforcement Program as "a pretrial

4

diversion program." Pretrial diversion programs are not "intimately associated with the judicial phase of the criminal process," because their very purpose is to avoid the necessity of judicial intervention.[2] Although K.R.S. § 514.040(5) allows the county prosecutor to issue 10-day notice letters and charge a fee for doing so, the 10-day notice letters can be sent by anyone, which further supports the conclusion that this service is not prosecutorial. Therefore, the defendant is not entitled to absolute immunity from liability in his personal capacity in conjunction with his promotion of the county check enforcement program.

### 2. Qualified Immunity

Prosecutors are entitled to qualified immunity from liability for actions taken in their administrative or investigative roles. *Higgason*, 288 F.3d at 877. Qualified immunity applies only to actions taken within the general scope of the official's authority. *Weaver v. Shadoan*, 340 F.3d 398, 406 (6th Cir. 2003). The defendant asserting qualified immunity bears the burden of establishing facts that suggest he was acting within that authority. *Flint ex rel. Flint v. Kentucky Dep't Corr.*, 270 F.3d 340, 347 (6th Cir. 2001). Assuming that, as the court must for the purposes of a motion to dismiss, the defendant told local business owners that they were *required* to use the county check enforcement program, that representation would

---

[2] While the defendant's exhibits are not properly considered at this stage, the court notes that the "Bad Check Protection Kit," created by the defendant's office and distributed to local businesses, informs potential participants that the program has the potential to "dramatically reduce the case load for law enforcement and the courts."

be false and could therefore be deemed outside his authority as prosecutor. *See Hudson v. Coleman*, 347 F.3d 138, 146 (6th Cir. 2003) ("It is inappropriate for a Court to decide legitimate . . . scope of authority questions without the benefit of fact-finding and briefing.").

Even if the statements were within the defendant's official authority, qualified immunity would not warrant dismissal at this point. To determine whether qualified immunity applies to a particular act, the courts asks (1) whether the action violated a constitutionally protected right; (2) if so, whether that right was clearly established at the time of the official action; and (3) whether the official's actions were objectively unreasonable in light of the clearly established right. *Higgason*, 288 F.3d at 876; *Tucker v. City of Richmond*, 388 F.3d 216, 219 (6th Cir. 2004). A right is "clearly established" when "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The action must clearly be unlawful in light of pre-existing law. *Id.* The defendant bears the burden of pleading qualified immunity, but the plaintiff is responsible for showing that the defendant is not entitled to its protection. *Blake v. Wright*, 179 F.3d 1003, 1007 (6th Cir. 1999).

The plaintiff alleges that the defendant's representations to local businesses unlawfully interfered with his ability to operate his business and deprived him of his constitutionally protected property interest. The right to pursue one's livelihood is

clearly established under the Fourteenth Amendment. *Allgeyer v. Louisiana*, 165 U.S. 578, 589 (1897); *Alerding v. Ohio High Sch. Athletic Ass'n*, 779 F.2d 315, 318 (6th Cir. 1985); *Akers v. Floyd County Fiscal Court*, 556 S.W.2d 146, 150 (Ky. 1977).[3] The right is also protected by the Kentucky Constitution. *City of Louisville v. Sebree*, 214 S.W.2d 248, 252 (Ky. 1948). The plaintiff pleads and could prove that the defendant "illegally informed businesses and individuals that they are required to use his office ... to collect bad checks rather than using the Plaintiff to do so" in order to "deprive the Plaintiff of business opportunities," which would be objectively unreasonable in light of the well-recognized right to pursue an occupation.

Taking the plaintiff's allegations as true, the plaintiff has pleaded all three elements required to overcome the claim of qualified immunity. Therefore, dismissal of the individual claims against the defendant, insofar as they are related to the representations made to businesses about the procedure for collecting on bad checks, is not warranted based on either absolute or qualified immunity at this stage.

**B.     Claims Against the Defendant in His Official Capacity**

A § 1983 claim against a government agent in his official capacity is treated as a suit against the governmental entity. *Graham*, 473 U.S. at 165. Official

---

[3] Although the plaintiff describes the interference as affecting a property interest, the right to work is typically classified as a liberty interest. *See Allgeyer*, 165 U.S. at 589.

7

capacity liability under § 1983 requires that the act causing the deprivation have been taken pursuant to official municipal policy. *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978). An isolated decision may constitute municipal policy "where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Pembaur v. Cincinnati*, 475 U.S. 469, 481 (1986). However, an official's exercise of discretion does not automatically give rise to municipal liability. *Id.* at 482. Defenses that are available to the governmental body can be asserted by a defendant sued in his official capacity. *Graham*, 473 U.S. at 167.

### 1. Eleventh Amendment

The Eleventh Amendment to the United States Constitution deprives the federal courts of jurisdiction over "any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State." U.S. Const. Amend. 11. The amendment also protects a state from suit in federal court by one of its own citizens. *Port Authority Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990). A lawsuit against a county prosecutor for damages is deemed a suit against the state, to which immunity attaches. *Boone*, 72 Fed. Appx. at 307. The immunity from damage suits that is afforded by the Eleventh Amendment is not diminished by 42 U.S.C. § 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989) (neither states nor officials acting in official capacity are subject to suit under § 1983).

Unless a state has waived immunity or immunity has been overridden by Congress, a state can only be sued in federal court for prospective relief, because such suits are not treated as being against the state. *Ex Parte Young,* 209 U.S. 123 (1908); *Graham*, 473 U.S. at 167 n.14. The Eleventh Amendment does not bar actions based on conduct that is beyond a municipal official's statutory authority. *Ex Parte Young*, 209 U.S. 123; *Corporate Risk Mgmt. Corp. v. Solomon*, 936 F.2d 572, 1991 WL 119283, at *1 (6th Cir. July 2, 1991).

Insofar as the plaintiff requests injunctive relief against the defendant in his official capacity, the claim is not barred by the Eleventh Amendment, either as to the representations made to businesses or the prosecutorial decisions made by the defendant. *Will*, 491 U.S. at 71 n.10; *Ex Parte Ayers*, 123 U.S. 443, 506 (1887). Whether the claims for damages are barred by the Eleventh Amendment turns upon the scope of the defendant's authority.

The claims for damages against the defendant in his official capacity arising out of his decisions with respect to prosecution and arrest warrants must be dismissed pursuant to the immunity granted to states by the Eleventh Amendment. The decision whether to prosecute a particular case is the essence of a prosecutor's role in the government and is firmly within his statutory authority. *Boone*, 72 Fed. Appx. at 307; *Ireland*, 113 F.3d at 1446. Therefore, the plaintiff's damages claims against the defendant in his official capacity for his prosecutorial decisions are dismissed pursuant to the Eleventh Amendment.

Taking the plaintiff's allegations as true, the defendant's statements to businesses regarding the necessity of using the defendant's bad check program may have been made outside the scope of the defendant's authority. *See Hudson*, 347 F.3d at 146. Therefore, the Eleventh Amendment does not warrant dismissal of the plaintiff's damages claims arising out of the defendant's representations to Madison County businesses.

### 2. Standing

The defendant's argument that the plaintiff lacks standing to bring suit focuses on the plaintiff's allegation that his clients "have the right to prosecution of those guilty of theft by deception." However, the complaint also can be read as asserting that the defendant's selective prosecution and his representations to businesses interfere with the plaintiff's business by depleting his client base. The plaintiff has standing to assert claims related to his business interest, and dismissal is therefore inappropriate on that basis.

### 3. Abstention

The plaintiff characterizes his case as one concerning the "wrongful misuse of an administrative process to refuse commencement of prosecutorial decision-making when the plaintiff's clients have been victims of theft by deception." The plaintiff essentially claims that the defendant has refused to exercise his discretion at all where the plaintiff has been involved and seeks an order requiring him to consider all cases equally. The defendant argues that the doctrine of abstention

10

precludes the court's consideration of the plaintiff's claim, because the judiciary cannot and should not compel the prosecution and investigation of particular cases. *Peek v. Mitchell*, 419 F.2d 575, 577 (6th Cir. 1970).

The plaintiff has not alleged that the defendant failed to prosecute merely some of the cases in which the plaintiff had been involved; his complaint implies that the defendant has refused even to consider prosecuting all such cases. The complaint requests injunctive relief requiring the defendant to prosecute persons who write bad checks to his clients "the same as persons who have been given notice by the Defendant's office." A prosecuting attorney has a common law duty to be impartial in both abstaining from and pursuing prosecution and to inquire into the facts before making that determination. 27 C.J.S. *District and Prosecuting Attorneys* § 29; *see also United States v. Sullivan*, 937 F.2d 1146, 1150 (6th Cir. 1991). Assuming that the defendant has refused even to consider bad check claims in which the plaintiff has been involved, the court could mandate the defendant to exercise his discretion, even if it cannot dictate the result. Therefore, the doctrine of abstention does not require the court to dismiss any of the plaintiff's claims.

### 4. Failure to state a claim upon which relief may be granted

To this point, the court has found no reason to preclude the claims against the defendant in his individual capacity for his alleged representations to Madison County businesses. It has also not been necessary to discredit the claims against

the defendant in his official capacity for damages and injunctive relief stemming from the information allegedly provided to businesses or injunctive relief from the plaintiff's refusal to prosecute any claims related to the plaintiff. The court therefore turns to whether, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the plaintiff has failed to state a claim for which relief may be granted under the Fourteenth Amendment, the Kentucky Constitution, or state tort law.

Rule 12(b)(6) dismissal can be granted only when the defendant establishes beyond doubt that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

### a. *Fourteenth Amendment - Due Process*

The plaintiff's Fourteenth Amendment due process claims against the defendant, both in his individual and official capacity, for his representations to Madison County businesses will not be dismissed. The claim against the defendant arising out of his prosecutorial decisions in his official capacity is still viable insofar as it requests prospective relief.

The prerequisites to a due process property claim under § 1983 are (1) a deprivation, (2) of property, (3) under color of state law. *Brotherton v. Cleveland*, 923 F.2d 477, 479 (6th Cir. 1991); *Collins v. Nagle*, 892 F.2d 489, 497 (6th Cir. 1989).

A person has a protected property interest under the Fourteenth Amendment only if he has a legitimate claim of entitlement to it. *Bd. of Regents v. Roth*, 408

U.S. 564, 577 (1972).  One may have a legitimate interest in being free from governmental interference in the pursuit of a private occupation.  *See Blackburn v. City of Marshall*, 42 F.3d 925, 941 (5th Cir. 1995).  Therefore, for the purpose of a Rule 12(b)(6) motion to dismiss, the plaintiff has adequately presented a protected property right.[4]

In his complaint, the plaintiff claims that the alleged actions taken by the defendant deprived him of business opportunities and income.  This claim is sufficient to satisfy the requirement of a deprivation at the motion-to-dismiss stage of litigation.

To satisfy the state law requirement when the deprivation was the result of an unauthorized act of the state official, the plaintiff must also demonstrate that the state does not provide an adequate remedy for the harm.  *Parratt v. Taylor*, 541 U.S. 527, 543 (1981).  Under the Kentucky Constitution, the Commonwealth is not subject to suit for intentional or unintentional torts committed by its agents.  *Calvert Invs., Inc. v. Louisville & Jefferson County Metro. Sewer Dist.*, 805 S.W.2d 133, 139 (Ky. 1991).  Therefore, the plaintiff could succeed on the "color of state law" element, whether the deprivation was inflicted pursuant to a state policy or an unauthorized action.  Because the plaintiff could prove each of the elements

---

[4] Although the plaintiff couches his claim in terms of a property interest, the right to engage in private employment free from governmental intrusion could also be treated as a liberty interest.  *Greene v. McElroy*, 360 U.S. 474, 492 (1959).  For purposes of this motion to dismiss, however, it is sufficient for the court to find that the plaintiff could succeed on his Fourteenth Amendment claim by asserting a property interest in his ability to conduct his business.

necessary to prevail on his Fourteenth Amendment claim, that claim cannot be dismissed pursuant to Rule 12(b)(6).

b.     Fourteenth Amendment - Equal Protection

The plaintiff's Fourteenth Amendment equal protection claims against the defendant, both in his individual and official capacity, for his representations to Madison County businesses will not be dismissed.  The claim against the defendant arising out of his prosecutorial decisions in his official capacity is still viable insofar as it requests prospective relief.

The Equal Protection Clause requires equal treatment of equally situated persons.  *City of Cleburne, Texas v. Cleburne Living Center*, 437 U.S. 432, 439 (1985).  The provision prohibits "discrimination by government which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference."  *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Co., Ohio*, 430 F.3d 783, 788 (6th Cir. 2005).  Government action which burdens a fundamental right or targets a suspect class is examined under strict scrutiny.  *Hadix v. Johnson*, 230 F.3d 840, 843 (6th Cir. 2000).  The third category of equal protection claims is the "class-of-one" theory, and success requires that the official action be "so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the [governmental] actions were irrational."  *TriHealth*, 430 F.3d at 788.  A class-of-one claim can be proven by either "negativing every conceivable

basis which might support the government action" or showing that the challenged action was motivated by animus or ill will. *Id.* Where the alleged discrimination is not statutory, the plaintiff must show that it is part of a government policy or custom, and that the disparate treatment was motivated by a discriminatory purpose. *Jones v. Union County, Tennessee*, 296 F.3d 417, 426 (6th Cir. 2002); *see also Lawrence v. Chancery Court of Tennessee*, 188 F.3d 687, 695 (6th Cir. 1999) (discriminatory practice unconstitutional if there is no rational basis).

Because the plaintiff is not a member of a suspect class and does not claim that his fundamental rights are implicated, the challenged action is valid if it is not irrational. The complaint alleges that the defendant specifically discriminated against cases in which the *plaintiff* was involved, not against all cases initiated by private debt collectors. On the facts averred by the plaintiff, he could demonstrate that the defendant had a policy of treating him differently than similarly situated individuals engaged in the business of collecting funds for the payment of bad checks, and that there was no rational basis for the differentiation. Although his equal protection claim is weak because it does not intimate that the plaintiff is a member of any class, let alone a protected one, the equal protection claim cannot be dismissed under Rule 12(b)(6).

### c. Kentucky Constitution

Section 2 of the Kentucky Constitution prohibits the arbitrary deprivation of a person's life, liberty, or property. Ky. Const. § 2. Section 2 is generally regarded

15

as a due process guarantee. *Smith v. O'Dea*, 939 S.W.2d 353, 357 (Ky. Ct. App. 1997). This assurance is consistent with that provided by the United States Constitution. *See Romero v. Admin. Office of Courts*, 247 S.W.3d 638, 640-41 (Ky. 2005). Section 3 of the Kentucky Constitution establishes the right to equal protection. Ky. Const. § 3. The Kentucky equal protection guarantee is the equivalent of that provided by the Fourteenth Amendment to the United States Constitution. *Roberts v. Mooneyhan*, 902 S.W.2d 842, 843 (Ky. Ct. App. 1995).

Because the Kentucky Constitution provides the same protection as the United States Constitution, and the court found dismissal unwarranted under the latter, the plaintiff's claims under sections 2 and 3 of the Kentucky Constitution will not be dismissed at this time for failure to state a claim.

### d. Tortious Interference

Kentucky follows the law of the *Restatement (Second) of Torts* with respect to tortious interference with contract claims. Thus, liability arises where "one who, without a privilege to do so, induces or otherwise causes a third person not to (a) perform a contract with another, or (b) enter into or continue a business relation with another." *McCarthy v. KFC Corp.*, 607 F. Supp. 343, 345 (W.D. Ky. 1985) (*quoting Carmichael-Lynch-Nolan Etc. v. Bennett Etc.*, 561 S.W.2d 99, 102 (Ky. Ct. App. 1977)). The court should consider the nature of the defendant's conduct, the defendant's motive, the plaintiff's interests, the interests sought to be advanced by the defendant, the public interest, the nexus between the defendant's

16

conduct and the interference, and the relationship of the parties. *Uppal v. Gateway Reg. Health Sys.*, 205 WL 2323174, at *5 (Ky. Ct. App. Sept. 23, 2005) (*quoting Restatement (Second) of Torts,* § 767).

The plaintiff has pled and could prove that the defendant's conduct caused him to lose business and money, presumably by discouraging businesses from using his services. This allegation satisfies the pleading requirement for tortious interference with contract. Therefore, the plaintiff's tortious interference claim cannot be dismissed for failure to state a claim.

### 5. Statute of Limitations

As previously noted, the plaintiff's complaint does not refer to specific instances of failure to prosecute, but rather challenges an alleged policy of refusing to pursue claims in which the plaintiff has been involved, which is a continuing violation of the plaintiff's rights. Under the "continuing violations" doctrine, an exception to the normal rules governing statutes of limitation exists where there is evidence of present discriminatory activity or where there is a longstanding and demonstrable discriminatory policy. *Dixon v. Anderson*, 928 F.2d 212, 216-17 (6th Cir. 1991). The complaint alleges both a current and continuous pattern of discrimination, and dismissal based on the statute of limitations is therefore not appropriate.

### H. Lack of an independent federal basis

Because the court has not dismissed all of the federal constitutional claims, it

need not consider whether the pendent state law claims should be dismissed pursuant to 28 U.S.C. § 1367(c)(3).

**Conclusion**

In light of the foregoing discussion, **IT IS ORDERED** that the defendant's motion to dismiss the complaint (DE 2) is **DENIED** to the extent that this action may proceed on these bases: (1) damages and injunctive relief for violation of the Fourteenth Amendment in the defendant's individual and official capacity arising out of his representations to businesses; (2) injunctive relief for Fourteenth Amendment violation in the defendant's individual and official capacity arising out of his prosecutorial decisions; (3) damages and injunctive relief for violations of the state constitution in the defendant's individual and official capacities arising out of his representations to businesses; (4) injunctive relief for violations of the state constitution in the defendant's individual and official capacity arising out of his prosecutorial decisions; (5) damages and injunctive relief for tortious interference in the defendant's individual and official capacity arising out of his representations to businesses; and (6) injunctive relief for tortious interference in the defendant's individual and official capacity arising out of his prosecutorial decisions.

**IT IS FURTHER ORDERED** that the motion is **GRANTED** to the extent that the (1) the defendant is entitled to absolute prosecutorial immunity from damage suits for his arrest decisions, regardless of motive, and those claims against him in his individual capacity are dismissed; and (2) the damages claims against the defendant

in his official capacity for prosecutorial decisions are dismissed pursuant to the Eleventh Amendment.

**IT IS FURTHER ORDERED** that the defendant's alternative motion for summary judgment is **DENIED** because material issues of fact exist.

Signed on March 21, 2006

JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY